IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID M. KOLLER                          :
              Plaintiff,

                                                    CIVIL ACTION
       v.                                    :      NO. 10-2933

RILEY RIPER HOLLIN &
COLAGRECO                                :
              Defendant.

**MEMORANDUM**

**Jones, J.**                                          **February 27, 2012**

## I.      Introduction

Plaintiff, David M. Koller, began his employment with Defendant, Riley Riper Hollin &

Colagreco, at the end of August 2007.  During his employment with Defendant, Plaintiff

sustained a knee injury, which required him to undergo surgery and to utilize time under the

Family Medical Leave Act of 1993, 29 U.S.C. §§ 260-2654 (2006), hereinafter "FMLA."

Several weeks after his surgery, Defendant terminated Plaintiff's employment, citing economic

issues as the reason.  Accordingly, Plaintiff commenced the within action by filing a Complaint

in which he alleged that Defendant discriminated against him on the basis of his disability and

gender, that Defendant retaliated against him for taking medical leave, and that Defendant

breached an oral employment contract.

Defendant filed a Motion to Dismiss, which was denied without prejudice and leave was

granted for Plaintiff to file an Amended Complaint.  Plaintiff has done so and Defendant once

again seeks dismissal of said Complaint for failure to state a claim upon which relief can be granted.  *See* Fed.R.Civ.P. 12(b)(6).  For the reasons set forth hereinbelow, said Motion will be granted in part and denied in part.

## II.    Discussion

### a.    Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (internal quotation marks omitted)). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2)." *Iqbal*, 129 S.Ct. at 1949.

The Third Circuit recently enumerated the steps a court should take in evaluating the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, , [556] U.S. [662], 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

The sufficiency of Plaintiff's Amended Complaint shall be assessed accordingly.

### b.    Background

Plaintiff, David M. Koller, began his employment with Defendant, Riley Riper Hollin & Colagreco in August, 2007.  (Am. Compl. ¶ 13) Plaintiff was an experienced attorney, and had been awarded the distinction of "Rising Star Super Lawyer" by Philadelphia Magazine in 2007, 2008, 2010 and 2011. (Am. Compl. ¶¶ 7, 14) Defendant hired Plaintiff to work for the first named partner, Thomas A. Riley, Jr. ("Riley"), and was promised that he would be involved strictly in employment litigation. (Am. Compl. ¶¶ 14, 17)

Upon commencing employment, Plaintiff was informed that a female associate, Jeanette Simone, would be taking the position under Riley, and that Plaintiff would be assigned to another partner, George Randolph ("Randolph").  (Am. Comp. ¶ 14) Additionally, Plaintiff was assigned small collection cases, rather than the employment litigation matters that he desired.  (Am. Compl. ¶ 18) Plaintiff alleges that during this time, he observed a culture of preferential

3

treatment towards female associates, to the extent that females were given greater leniency with regard to schedule flexibility, absences, and medical leave.  (Am. Compl. ¶ 15)

Under Randolph, Plaintiff was required to work from 7 a.m. to 7 p.m. on weekdays and come to the office almost every weekend.  (Am. Compl. ¶ 19)  Plaintiff alleges that Randolph impeded his  attempts to attend marketing events, and when Plaintiff did attend, Randolph demanded he report back to the office.  (Am. Compl. ¶ 19)  Despite this, in December, 2008 Randolph gave Plaintiff an excellent performance review, stating that Plaintiff was "the best associate that he had ever had when it came to client relations and that Koller would have a 'long tenure' with the Riley firm."  (Am. Compl. ¶ 20)  Following this favorable review, Plaintiff was given a 5% pay raise and was told by Riley that "he was doing very well."  (Am. Compl. ¶ 21)

On January 11, 2009, Plaintiff tore his anterior cruciate ligament ("ACL"). (Am. Compl. ¶ 23) Plaintiff met with Human Resources Director, Colleen Mintzer on January 12, 2009, to advise her of his injury, at which point he voiced his concerns that the injury may cause him to lose his job. (Am. Compl. ¶ 24)  Ms. Mintzer assured Plaintiff that he would not lose his job and that necessary treatment time would be accommodated. (Am. Compl. ¶ 24)  Plaintiff was pre-approved by Ms. Mintzer and Randolph to take time off, possibly up to one month or more, for the necessary medical treatment and rehabilitation. (Am. Compl. ¶ 27)

On February 2, 2009, Plaintiff underwent surgery to repair his ACL.  (Am. Compl. ¶ 26) Up to that point, his work hours were severely reduced, and during the two weeks Plaintiff took off to recover, he was heavily medicated and had trouble staying awake but still kept in contact with his secretary and Randolph. (Am. Compl. ¶¶ 25, 28)  On February 17, 2009, Plaintiff returned to work, despite being in pain, medicated, and having difficulty moving and driving.

4

(Am. Compl. ¶ 29) Beginning on February 24, 2009, Plaintiff attended physical therapy appointments twice a week in the morning, which caused him to arrive at the office at approximately 10 a.m. (Am. Compl. ¶ 30) Defendant refused to accommodate his tardiness that resulted from the therapy sessions. (Am. Compl. ¶ 31)

On March 2, 2009 - one week after the therapy sessions began - Plaintiff was discharged. (Am. Compl. ¶ 32) Defendant cited tough economic times as the reason for the termination, and specifically told Plaintiff that he was not being discharged for work performance issues. (Am. Compl. ¶ 32) Plaintiff was the only associate terminated at that time; just three months after being given a favorable review and 5% raise. (Am. Compl. ¶ 33)

### c.    Individual Claims

### I.    FMLA Violations

The FMLA entitles "employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2) (2006). Eligible employees, those employed with an employer for at least twelve months, may take up to twelve workweeks of leave per twelve-month period because of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). This leave may be taken consecutively or intermittently. 29 U.S.C. § 2612(b)(1).

In order to protect this right, the FMLA prohibits employers from: (1) interfering with an employee's exercise of this right; and (2) discriminating or retaliating against an employee who exercises this right. *See* 29 U.S.C. § 2615(a); *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).[1] Upon returning from FMLA leave, the employee is entitled to be reinstated

---

[1] "The United States Department of Labor ("DOL") has promulgated regulations implementing the FMLA, as authorized by 29 U.S.C. § 2654." *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004). The, "interference" and "retaliation," provisions of

to his or her former position, or an equivalent one.  29 U.S.C. § 2614(a)(1).  However, ". . . if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement."  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004) (citing 29 C.F.R. § 825.216(a)(1)).

"In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits."  *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from taking such leave." *Conoshenti*, 364 F.3d at 142 (citing 29 C.F.R. § 825.22(b)). The Third Circuit has explicitly ruled that "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison*, 430 F.3d at 119. "Under this theory, the employee need not show that he was treated differently than others[,] [and] the employer cannot justify its actions by establishing a legitimate business purpose of its decision." *Id.* at 119-20.

Plaintiff herein avers that Defendant prevented leave and retaliated against him for taking leave from his job to seek treatment for his knee injury.  Specifically, Plaintiff alleges that he ". . . asked that Defendant accommodate his later arrival two days per week for the therapy sessions, but Defendant refused, contrary to prior assurances by the HR Director." (Am. Compl. ¶ 31)  In support of its Motion to Dismiss this claim, Defendant mischaracterizes the timing of events set forth in Plaintiff's Amended Complaint by arguing "Plaintiff alleges only that he told

_____

§ 2615(a) are found in the Department of Labor Regulations.  *See*  29 C.F.R. § 825.220(a), (c) (2009).

Defendant that he would need time off for his surgery, received the time off, *came back to work and was terminated a month later due* to economic reasons." (Mot. Dismiss 23) (emphasis added)  To support this argument, Defendant cites to case law involving two terminations; one which occurred forty-four (44) days after an employee returned from FMLA leave, and another which occurred fifty-five (55) later.  In each case, the court determined that the referenced periods of time failed to demonstrate a causal relationship.  However, in this case, Plaintiff alleges that while still on FMLA, he was denied leave to attend two-hour physical therapy sessions twice a week and was terminated only four (4) business days after his second session. In vaguely addressing this allegation by Plaintiff, Defendant claims it is entitled to specific details regarding identities, communications, dates, etc... and that Plaintiff's pleadings are deficient for failure to provide same.   However, when read *in toto*, Plaintiff's Amended Complaint satisfies the notice-pleading standard of Rule 8 with regard to this issue.

Turning now to the retaliation aspect of Plaintiff's FMLA claim, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).[2]  In order to successfully

---

[2]  Regarding FMLA retaliation claims, the Federal Regulations note that:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c).

claim retaliation, an employee must show that: "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." *Conoshenti*, 364 F.3d at 146.  "As with other retaliation claims, the Court utilizes the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Fleck v. WILMAC Corp.*, No. 10-5562, 2011 U.S. Dist. LEXIS 54039, at *28 (E.D. Pa. May 19, 2011).

To demonstrate that FMLA leave was taken, an employee need not actually commence the leave, but must merely *invoke* the leave. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). There is no dispute in this case as to whether or not Plaintiff utilized FMLA leave for his knee injury. With respect to the "adverse employment decision" requirement, termination may be deemed an adverse employment decision for this purpose.  *Id.* at *31; *see also Keim v. Nat'l R.R. Passenger Corp.*, No. 05-4338, 2007 U.S. Dist. LEXIS 54200, at *21-22 n.6 (E.D. Pa. July 26, 2007) (ultimately concluding that termination is in fact an adverse employment decision).  There is no question that Plaintiff was terminated after utilizing FMLA leave.  Thus, an "adverse employment decision" may be inferred for purposes of the instant Motion.

Finally, the Third Circuit has articulated two relevant factors in establishing a causal link between a protected right and an adverse employment decision: (1) temporal proximity; or (2) evidence of actual antagonistic conduct.  *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. Pa. 2007).  It is with the "causal link" aspect of Plaintiff's retaliation claim, that Defendant takes

---

Therefore, "[e]ven though 29 C.F.R. § 825.220(c) appears to be an implementation of the "interference" provisions of the FMLA, its text unambiguously speaks in terms of "discrimination" and "retaliation," and [the court] shall, of course, apply it in a manner consistent with that text." *Conoshenti*, 364 F.3d at 147.

issue. However, for the reasons discussed above regarding timing, this Court finds that Plaintiff

has sufficiently pleaded facts regarding temporal proximity, which could ultimately entitle him to

relief.  Accordingly,  Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint

shall be denied.

### ii.      Discrimination in violation of the ADA.

Count II of Plaintiff's Amended Complaint alleges discrimination in the form of "hostile

work environment," under the ADA.  The ADA seeks to prevent employment discrimination of

qualified individuals on account of their disability.  42 U.S.C. § 12112(a).  Specifically, the ADA

requires employers to make "reasonable accommodations to the known physical or mental

limitations of an otherwise qualified individual with a disability, unless the employer

demonstrates that such accommodations would impose an undue hardship in the operation of

their business." *Fleck v. WILMAC, Corp.*, No. 10-5562, 2011 U.S. Dist. LEXIS 54039, at *10

(E.D. Pa. May 19, 2011) (quoting 42 U.S.C. § 12112(b)(5)(A) (2006)). In order to state a claim

for discrimination under the ADA, a plaintiff must allege that: "1) [s/he] is 'disabled' within the

meaning of the ADA; 2) [s/he] is otherwise qualified to perform the essential functions of the

job, with or without reasonable accommodations by the employer; and 3) [s/he] has suffered an

adverse employment decision as a result of discrimination." *Id.* (citing *Gaul v. Lucent Techs.*,

134 F.3d 576, 580 (3d Cir. 1998)). The dispute between the parties regarding this issue

essentially boils down to whether or not Plaintiff qualifies as "disabled" under the ADA, and

therefore, whether any discrimination could have occurred as alleged by Plaintiff.[3]

---

[3]  The analysis for ADA cases was modified by the ADA Amendment Act of 2008
("ADAAA"), which went into effect on January 1, 2009 and is applicable to this case. The stated
goal of the ADAAA is to reinstate the original intent of the ADA by providing protections to the

Under the ADAAA, to qualify as disabled, a plaintiff must prove one of the following: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. 12102(1) (West 2009). "[M]ajor life activities include, but are not limited to . . . sleeping, walking, standing . . . concentrating, thinking, communicating, and working." 42 U.S.C. 12102(2)(A).

Though "substantially limits" is not meant to be a demanding standard, "[n]ot every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii). *See also* 154 Cong. Rec. S8840 (2008) (statement of Sen. Tom Harkin) ("We reaffirm that not every individual with a physical or mental impairment is covered by the first prong of the definition of disability in the ADA."). In fact, the ADAAA was adopted to specifically address certain impairments that were not receiving the protection that Congress intended  - cancer, HIV-AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities - not minor, transitory impairments,  except if of such a severe nature that one could not avoid considering them disabilities. *See, e.g.*, 154 Cong. Rec. H8286 (2008) (statement of Rep. George Miller).  Although  Congress sought to abrogate the "significantly or severely restricting" requirement as it pertained to the "substantially limits" factor of the ADA, the ADAAA still

---

disabled, by partially abrogating the Supreme Court decisions in *Toyota Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 185 (2002) (holding that a substantially limiting impairment is one "that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives") and *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 499 (1999) (holding that the ameliorative effects of mitigating measures should be considered when evaluating an individual's impairment), which Congress believes to have unfairly restricted the protections of the ADA.

requires that the qualifying impairment create an "important" limitation. 29 C.F.R. pt. 1630 App.

(2011). *See also* H.R. Rep. No. 110-730 (2008) ("[T]he limitation imposed by an impairment

must be important . . . ."). Therefore, even under the relaxed ADAAA standards, a plaintiff is

still required to plead a substantially limiting impairment. *See Fleck*, 2011 U.S. Dist. LEXIS

54039, at *12-15.

In assessing whether a "substantially limiting impairment" is sufficiently pled, the court

must determine what, if anything, distinguishes Plaintiff's Amended Complaint from those that

were deemed to sufficiently plead a disability. Such analysis requires a determination that the

Complaint sufficiently pleaded the degree of limitation caused by the impairment and the nature

of the alleged impairment at the time of his termination.[4] Plaintiff avers: (1) "[F]or two weeks

following his surgery[ ] [h]e was in pain and heavily medicated so he had trouble staying awake

and concentrating . . . ."; (2) "Two weeks after the surgery, on February 17, 2009, while he was

still in pain and medicated, he returned to work, even though he had difficulty moving and

driving because of the cast on his knee to reduce movement"; and (3) "[H]e was able to be at

work around 10 a.m. on the two days per week that he had his therapy sessions." (Am. Compl. ¶¶

28-30) These allegations do not rise to the level of important, let alone, substantial limitations on

a major life activity.[5] Plaintiff pleads that the temporary pain and medication post-

---

[4] *See Fleck v. WILMAC Corp.*, 10-5562, 2011 U.S. Dist. LEXIS 54039, at *13 (E.D. Pa.
May 19, 2011) ("The Court's relevant determination . . . is whether the plaintiff had a disability
at the time of the adverse employment decision.")

[5] *See Gray v. Walmart Stores, Inc.*, 10-171, 2011 U.S. Dist. LEXIS 51155, at *32-33
(E.D.N.C. May 12, 2011) ("Aside from . . . extremely brief descriptions of the physical
conditions that allegedly limit her ability to work, plaintiff provides practically no details about
her impairment. The court has no further information on the severity or type of plaintiff's medical
limitations. Plaintiff describes her condition with so few details that the court cannot infer

surgery hindered - not substantially limited - his ability to stay awake and alert two weeks after the surgery.[6]  Additionally, Plaintiff pleads that two weeks after the surgery, he had difficulty moving and driving, but was able to come to work. However, he makes no allegations regarding his physical condition at the time of termination, except to say he arrived late to work twice because he was attending physical therapy sessions.[7]

---

whether the activity limited by plaintiff's impairment is a major life activity or whether plaintiff's impairment substantially limits a major life activity. Thus, plaintiff has alleged no facts from which the court can conclude that she has the requisite disability to qualify her for relief under 42 U.S.C. § 12102(1)(A).")

[6]  Plaintiff herein alleges to have had "difficulty" moving his leg shortly after surgery because of a cast.  This is simply insufficient to establish a substantial limitation.  *See Fleck,* 2011 U.S. Dist. LEXIS 54039, at *12-15 (allegations of a *chronic* ankle injury that prevented a plaintiff from standing for more than one hour or to walk for more than a half-mile were deemed sufficient to survive a Motion to Dismiss under the ADAAA).

[7]  In support of his allegation of "disability," Plaintiff cites to the matter of *Tish v. Magee-Women's Hospital of the University of Pittsburgh Medical Center,* 06-820, 2008 U.S. Dist. LEXIS 87010 (W.D. Pa. October 27, 2008).  Although Valentina Tish similarly suffered from an ACL tear which required surgery, the facts surrounding Tish's injury clearly demonstrated a substantial limitation affecting major life activities.  For instance, Tish remained out of work six weeks following surgery, as she was still experiencing discomfort which required a brace and continued physical therapy. *Tish,* 2008 U.S. Dist. LEXIS 87010, at *24-25.  Five months after surgery - and still unable to work full-time - Tish's doctor noted continued pain and swelling from the injury. *Tish,* 2008 U.S. Dist. LEXIS 87010, at *25-26.   In response to Defendant's Motion for Summary Judgement, Plaintiff averred that . . .

> She was unable to cook or clean for six months. After the passage of six months, she was able to cook or clean only with both pain and a need for frequent breaks. Tish asked her friends to do her grocery shopping for her, since she was unable to drive for a period of six weeks. Three months after her surgery, she struggled to walk up and down steps and to carry laundry or groceries.  Her leg swelled whenever she engaged in physical activities, making her unable to stand or walk for even a short period of time.  She needed to rest after standing or walking for only ten to fifteen minutes.  Sitting on a toilet was a struggle for her during that period of time.

*Tish,* 2008 U.S. Dist. LEXIS 87010 at *27-28.

Plaintiff has failed to adequately plead the existence of an impairment that would rise to the level of "substantially" limiting one or more of Plaintiff's major life activities; he makes no allegation that his termination was the result of any record of the alleged impairment,[8] and he failed to allege that his termination was the result of Defendant regarding him as having the alleged impairment.[9]  Instead, Plaintiff conclusively states "At the time of his firing, Plaintiff was

_____

This Court is fully cognizant of the fact that a plaintiff's burden is much higher on a Motion for Summary Judgment, than it is on a Motion to Dismiss.  With that said, although Plaintiff relies upon *Tish* to support his claim that an ACL tear necessarily qualifies as a disability under the ADA, he has not alleged facts regarding his personal condition, which would compel this Court to find that his injury rose to the level of a "disability" for purposes of Act. Allegations of "difficulty" performing tasks such as moving and driving "because of the [cast] on his knee," simply do not rise to the requisite level.  (Am. Compl. ¶29)

[8]  *See Mohney v. Pennsylvania,* No. 11-340, 2011 U.S. Dist. LEXIS 93617, at *43 (W.D. Pa. Aug. 19, 2011) ("[T]o be considered as having a 'record of such impairment' within the meaning of the ADA, a plaintiff must 'provide evidence that [defendant] relied upon her record of impairment in making its employment decision.'") (citing *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 437 (3d Cir. 2009)).  Plaintiff herein has not made any allegation(s) of same, except to conclusively say "Defendant has discriminated against Plaintiff on the basis of his disability . . . " (Am. Compl ¶ 61)

[9]  *See Gray*, 2011 U.S. Dist. LEXIS 51155, at *34 ("'An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.' Here, other than the conclusory statement contained in the EEOC charge which states that plaintiff was 'discriminated against, based on being regarded as having a disability,' there are simply no facts in any of plaintiff's pleadings which show that anyone at Walmart regarded her as having an actual or perceived impairment or that anyone at Walmart subjected her to action that is unlawful under the ADA because of such an impairment.") (internal citations omitted). *See also Thomsen v. R&L Carriers Shared Servs., LLC*, No. 09-422, 2011 U.S. Dist. LEXIS 6692 (D. Neb. Jan. 24, 2011) ("'[T]he "regarded as" prong of § 12102(1) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.'") (quoting 42 U.S.C. § 12102(3)(B)).

13

physically impaired and disabled within the meaning of the ADA. Prior thereto no adverse action had been brought against him by Defendant. To the contrary, Plaintiff experienced only positive reinforcement and assurances." (Am. Compl. ¶56) Assessing all prior paragraphs of Plaintiff's Amended Complaint in a light most favorable to him, the allegations simply do not rise to the level necessary to infer any disability under the ADA.

Inasmuch as Plaintiff has failed to establish that he was "disabled" for purposes of an ADA claim, this Court need not address his ADA hostile work environment claim. However, for the sake of thoroughness, a discussion regarding same follows.

It is well established that:

> To state a prima facie hostile work environment claim under the ADA or PHRA, a plaintiff must allege that: (1) [s/he] is a qualified individual with a disability under the ADA, (2) [s/he] was subject to unwelcome harassment, (3) the harassment was based on [his/her] disability or request for an accommodation, (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his/her] employment and create an abusive working environment, and (5) the employer knew or should have known of the harassment and failed to take prompt, effective remedial action. *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999).

*Lowenstein v. Catholic Health East*, 2011 U.S. Dist. LEXIS 124167 (E.D. Pa. Oct. 26, 2011).

In this regard, Plaintiff's Amended Complaint woefully fails, as it provides nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 139 S.Ct. at 1949. Moreover, Plaintiff has provided nothing in his Amended Complaint to indicate any *potential* existence of facts which could support an ADA hostile work environment claim. Accordingly, this Court finds that any further attempt at amendment would be futile and Count II of Plaintiff's Complaint shall be dismissed with

---

prejudice.[10]

---

[10]  Plaintiff has already had an opportunity to amend his Complaint.  In response to the instant Motion to Dismiss, Plaintiff has summarily included an amendment request as an alternative to dismissal.  This Court is well aware of the degree of lenience to be afforded amendment requests and the reason for same . . .

> This Court has also interpreted Rule 15(a) by stating that the right to amend a pleading is addressed to the discretion of the district court, and great liberality in allowance of amendments is desired where it is necessary to bring about a furtherance of justice.  **However**, the prescription of a liberal policy toward amendment of pleadings does not mean the absence of all restraint.  Thus, the Court must exercise its discretion in the light of the circumstances presented by the case at hand.

> It must be further noted that practice under Rule 15(a) requires that a motion set forth, with particularity, the order requested and the grounds supporting the application.  In order to satisfy this requirement, the moving party should attach a proposed amended pleading to the motion in order to apprise the Court, and the opposing party, of the exact nature of the claim. In sum, the opposing party must be put on notice of the nature of the proposed amendment so that he is given ample opportunity to present specific objections.

*Lellock v. Paine, Webber, Jackson & Curtis, Inc.*, No. 81-2104, 1983 U.S. Dist. LEXIS 15883, at *14-16 (W.D. Pa. June 29, 1983) (emphasis added).

As noted above, the Complaint now before the court has already been amended.  Plaintiff has not formally requested leave to amend a second time, nor has he attached a proposed Second Amended Complaint as an exhibit to his request. This procedure has been flatly rejected, particularly when - as here - allowing amendment would constitute an exercise in futility:

> Where leave of court is required to amend the complaint, the plaintiff must request leave to amend and attach the proposed amended complaint to the request. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) (citing *Kelly v. Del. River Joint Comm'n*, 187 F.2d 93, 95 (3d Cir. 1951)).  Failure to attach the proposed amendment is fatal to the request. *Id*. at 252-53; *see also Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 206 (3d Cir. 2006) (citing *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002)).

> The Court finds that Plaintiff has not properly requested leave to amend her Complaint. Plaintiff did not file an amended complaint as a matter of course within 21 days after service of Defendants' motions to dismiss under Rule

12(b)(6). Therefore, Plaintiff is required to follow the procedure set forth under Rule 15(a)(2), as further delineated in *Fletcher-Harlee*. This she did not do. On November 18, 2010, Plaintiff summarily requested, in the alternative, leave to amend her Complaint in her responsive brief to Defendants' motion to dismiss. See Pl.'s Mem. in Opp'n at 24, ECF No. 63. However, she has failed to indicate in her responsive brief what additional facts she would allege in her amended complaint to adequately plead a §1 antitrust claim, nor did she indicate at oral argument on Defendants' motions to dismiss what additional facts she would allege in support of her antitrust claim. Most importantly, she has failed to provide the Court with a proposed amended complaint. This is fatal to her request for leave to amend the complaint. *Fletcher-Harlee*, 482 F.3d at 252; see also *Burtch v. Milberg Factors, Inc.*, Civ. A. No. 07-556-JJF-LPS, 2009 U.S. Dist. LEXIS 48431, 2009 WL 1529861, *3 (D. Del. May 31, 2009) (declining to grant leave to amend the complaint in an antitrust action for failing to present a proper request for leave to amend) (citing *Fletcher-Harlee*, 482 F.3d at 252). As the court of appeals opined in *Fletcher-Harlee*, "we hold that in ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint."

*Black v. JP Morgan Chase & Co.,* 10-848, 2011 U.S. Dist. LEXIS 103727, 91-96 (W.D. Pa. Aug. 10, 2011).

In that same vein,

[I]t is not for the Court to direct Plaintiffs not only as to where they have gone wrong but how to make it right, nor are Plaintiffs entitled to additional discovery so that they may present adequate pleadings. See *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699, 91 Fed. Appx. 418 (6th Cir. 2004) (plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies"). Plaintiffs' requests, and their failure to attach a proposed Second Amended Complaint or even delineate in their briefing what changes they seek to incorporate into their pleadings, make clear to the Court that Plaintiffs are in fact unprepared to file an second amended complaint which could remedy the pleading failures discussed earlier in the Court's opinion. If Plaintiffs require the Court's direction as to how to amend and 90 days' discovery to do so, leave to amend the Complaint again at this juncture would be inherently futile.

*Franks v. Food Ingredients Int'l, Inc.*, 09-3649, 2010 U.S. Dist. LEXIS 77280, at *24-26 (E.D. Pa. July 30, 2010). *See also Oliver v. Beard*, 358 Fed. App'x 297, 300 (3d Cir. Pa. 2009) ("[W]e conclude that the District Court did not err in denying [Plaintiff] leave to amend his complaint.

### iii.      Title VII

Count III of Plaintiff's Amended Complaint alleges that Defendant discriminated against

him on the basis of gender, and in doing so, created a hostile work environment.  Title VII makes

it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment

because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a). Title VII claims are analyzed

under the familiar *McDonnell Douglas*[11] burden-shifting framework.  *See Jones v. School Dist. of*

*Philadelphia*, 198 F.3d 403 (3d Cir. 1999). Under this standard, a plaintiff must first establish a

*prima facie* case of discrimination by showing: (1) the employee is a member of a protected

class; (2) the employee is qualified for the position; (3) the employee suffered an adverse

employment action; and (4) the action was taken under circumstances that give rise to an

inference of unlawful discrimination.  *Jones*, 198 F.3d at 410-11.  If a plaintiff is successful, the

burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the

employment action.  *McDonnell Douglas*, 411 U.S. at 802. Once a legitimate reason for the

employment action is presented, the burden shifts back to the plaintiff to show that the

---

With respect to [Plaintiff's] first request, the District Court correctly concluded that amendment
would have been futile because the proposed amended complaint suffered from the same defects
as his initial complaint.  Concerning [Plaintiff's] second request, dismissal was proper because
[he] failed to attach a proposed amended complaint to his motion.") (citations omitted).

   Again, any further amendment of Plaintiff's ADA claim would be futile.  Despite a
previous opportunity to amend, Plaintiff has failed to provide any supplemental averments in his
Amended Complaint, which could sustain this claim.  Therefore, above and beyond Plaintiff's
failure to attach a proposed Second Amended Complaint, this Court's determination of futility
necessarily precludes Plaintiff from partaking in a third bite of the proverbial apple.

   [11]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

employer's proffered reason was in fact pretext for gender discrimination. *Id*. at 804.

In cases alleging "reverse discrimination," where a non-protected class is the target of the alleged discrimination, the Third Circuit removes the first prong of the *prima facie* analysis. *See Iadimarco v. Runyon*, 190 F3d. 151, 157-58 (3d Cir. 1999) ("[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of [his] . . . sex . . . .'"). Therefore, to establish a *prima facie* "reverse discrimination" case, a "plaintiff must show (1) he or she was qualified for the position in question, (2) he or she suffered an adverse employment action, and (3) the evidence is adequate to create an inference that the adverse employment action [or less favorable treatment] was based on a trait protected by Title VII." *Warenecki v. City of Philadelphia*, No. 10-1450, 2010 U.S. Dist. LEXIS 116912, at *13-14 (E.D. Pa. Nov. 3, 2010). At the pleading stage, "a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler,* 578 F.3d at 213. However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* Similarly, "[w]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (internal citation omitted).

Plaintiff herein has clearly alleged that he was qualified for the position.  With regard to an "adverse employment action," the same has been defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Therefore, an inference can be made that Plaintiff suffered an adverse employment action.  However, with regard to the third requirement that "the evidence is adequate to create an inference that the adverse employment action [or less favorable treatment] was based on a trait protected by Title VII," Plaintiff's Amended Complaint fails.  Other than a recitation of the elements required to sustain a sex discrimination / hostile work environment claim, Plaintiff merely contends that "Defendant is liable for the acts alleged herein because Defendant's top echelon established the corporate culture at the law firm which encouraged sexual favoritism and discrimination."  (Am. Compl. ¶ 69)  Assessing this allegation in conjunction with the only other potentially relevant allegation contained within the Amended Complaint,[12] said Complaint falls critically short of creating even an inference that Plaintiff's firing was based upon the fact that he was a male and that a hostile work environment existed as a result thereof.  Because Plaintiff's Amended Complaint is devoid of any sustainable claim of

---

[12]  Plaintiff alleges:

> . . . [A]fter he had been employed for a short period of time at the Riley firm, he observed that female associates were given preferential treatment to male associates, including him, notwithstanding similar circumstances.  In particular, female associates (specifically Jeanette Simone) who took time off or had flexibility in their schedule were given preferential treatment to male associates. Further, female associates who needed FMLA leave were not retaliated against and were given leave.

(Am. Compl. ¶ 15)

sex discrimination, his hostile work environment claim is rendered moot.[13]  Review of Plaintiff's

Amended Complaint *in toto* demonstrates that any further amendment of said claim would be

futile, therefore Defendant's Motion to Dismiss Count III of said Complaint shall be granted with

---

[13]  In order to establish the existence of a hostile work environment claim, "a plaintiff must prove the following: (1) the employee suffered intentional discrimination because of [his] sex, (2) the discrimination was [severe or pervasive], (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that same position, and (5) the existence of respondeat superior liability." *Brown-Baumbach v. B&B Auto., Inc.*, No. 10-3351, 2011 U.S. App. LEXIS 12335, at *7 (3d Cir. June 17, 2011) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)). "To state a hostile work environment claim, a plaintiff must plausibly allege that [his] workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive work environment." *Burgess-Walls v. Brown*, No. 11-275, 2011 U.S. Dist. LEXIS 94087, at *26-27. In determining whether harassment is severe or pervasive, the court must examine the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Most recently, the Third Circuit reiterated that "[W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.*"* *Slater v. Susquehanna County*, 2012 U.S. App. LEXIS 406 (3d Cir. Pa. Jan. 9, 2012) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)) (quotation marks omitted).

In this case, the *only* allegation of hostility contained within Plaintiff's Amended Complaint, is a conclusory statement that "Defendant's top echelon established the corporate culture at the law firm which encouraged sexual favoritism and discrimination . . . [which] was sufficiently severe and pervasive such that it altered the condition of Plaintiff's employment . . . and resulted in [his] discharge . . . ." (Am. Compl. ¶¶ 69-70)  There is absolutely no factual allegation that Plaintiff was harassed or subjected to gender-based abuse in the workplace, let alone behavior that rises to the requisite severity or pervasiveness.  Therefore, upon assessing Plaintiff's Amended Complaint in conjunction with these standards, it becomes readily apparent that no plausible case can be made for a Title VII hostile work environment claim.  *See Harvey v. Holder*, Civ. No. 10-268 Erie, 2011 U.S. Dist. LEXIS 90684, at *12-14 (W.D. Pa. Aug. 15, 2011) (granting motion to dismiss of gender discrimination claim because complaint was no more than legal conclusions).

prejudice.

### iv.    Violation of the Pennsylvania Human Relations Act ("PHRA")

Count IV of Plaintiff's Amended Complaint further claims discrimination on the bases of his gender and alleged disability, under Pennsylvania's Human Relations Act.  "The proper analysis under Title VII and the Pennsylvania Human Relations Act  is identical, as Pennsylvania Courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001)).  The same is true for PHRA claims based upon alleged ADA violations.  *See Molisee v. Securitas Sec. Servs.,* No. 11-1056, 2012 U.S. Dist. LEXIS 421, at *19 (W.D. Pa. Jan. 4, 2012) ("Generally, courts analyze claims brought under the PHRA in accordance with their federal counterparts. That is because '[t]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA.' 'It is similarly 'proper to address [ADEA and PHRA age discrimination claims] collectively.'") (citations omitted).

For the reasons set forth above in this Court's discussion regarding Plaintiff's Title VII and ADA claims, his PHRA claim similarly fails and Defendant's Motion to Dismiss shall be granted with prejudice regarding same.

### v.    Breach of Contract

Pennsylvania presumes employment to be at-will and as such, either an employer or employee may terminate employment at any time, for any or no reason, absent a statute or contract to the contrary.  *See*, *Hardee-Guerra v. Shire Pharmaceuticals*, 737 F. Supp. 2d 318, 325 (E.D. Pa. 2010) (reiterating presumption of at-will employment); *Scully v. US WATS, Inc.*,

238 F.3d 497, 505 (3d Cir. 2001) (noting that at-will presumption "is necessary to prevent baseless assertions of oral employment contracts for a definite term" and that "[t]he party attempting to overcome the presumption must show clear and precise evidence of an oral employment contract for a definite term.") (internal citations omitted).

A plaintiff may overcome this presumption by demonstrating one of the following:

> (a) an express contract between the parties setting a definite term or requiring termination only for cause; (b) an implied-in-fact contract where all of the surrounding circumstances of the hiring indicate that the parties did not intend the employment to be at-will; or (c) and implied-in-fact contract plus additional consideration passing from the employee to the employer from which the court can infer the parties intended to overcome the at-will presumption.

*Natale v. Winthrop Res. Corp.*, No. 07-4686, 2008 U.S. Dist. LEXIS 54358, at *9 (E.D. Pa. July 9, 2008) (citing *Veno v. Meredith*, 515 A.2d 571, 577 (Pa. Super. Ct. 1986)).  With that said, "[e]vidence of a subjective expectation of a guaranteed employment period, based on employer practices or vague employer superlatives, is insufficient."  *Scully,* 238 F.3d at 505.

In matters of oral or implied agreements, it is within the province of the fact finder to determine the terms of the agreement and what the parties intended by those terms; however, it is purely the province of the court to dictate the legal effect of that agreement.  *McCormack v. Jermyn*, 40 A.2d 477, 479 (Pa. 1945).   This general rule is not without exception.  When "[t]he resolution of the issue is so clear that reasonable minds would not differ on its outcome, the court may decide.  In cases involving implied contracts of employment, the litigant will be able to reach the jury *only if he can **clearly** show that he and the employer intended to form a contract*." *DiBonaventura v. Consolidated Rail Corp.*, 539 A.2d 865, 868 (Pa. Super. Ct. 1988) (citations omitted) (emphasis added).  *See also Natale,* 2008 U.S. Dist. LEXIS 54358, at *9 ("Although the

22

question of intent is generally one for the jury, the court may decide if the resolution of the issue is so clear that reasonable minds simply could not differ.").

Plaintiff alleges that when he voiced fears he would be discharged because of his injury, Defendant's Human Resources Director, Colleen Mintzer, "assured him that he would not lose his job and would be accommodated for the time necessary for his treatment and rehabilitation." (Am. Compl. ¶ 24) Plaintiff also posits that Defendant's conduct – one favorable performance assessment and a 5% raise – created an implied contract. (Am. Compl. ¶ 80) Furthermore, Plaintiff alleges that he agreed to and relied upon this conduct and Ms. Mintzer's assurance. (Am. Compl. ¶ 80)  Viewing these averments in a light most favorable to Plaintiff, the same fail to even vaguely resemble a modification of the at-will presumption, let alone a clear expression of same.

"To rebut the at-will presumption by showing an express agreement, the plaintiff must present 'clear and precise evidence of an oral employment contract for a definite term.'" *Kane v. Platinum Healthcare, LLC*, No. 10-4390, 2011 U.S. Dist. LEXIS 7398, at *10 (E.D. Pa. Jan. 25, 2011) (citing *Veno v. Meredith*, 515 A.2d 571, 577 (Pa. Super. Ct. 1986)).  *See also Rossi v. Sun Ref. & Mktg. Corp.*, No. 94-3037, 1995 U.S. Dist. LEXIS 225, at *16 (E.D. Pa. Jan. 10, 1995) ("For an implied contract to exist, *both* the employer and employee must intend that a contract existed." (emphasis added)).  Employees who seek to show that an employer intended to modify the at-will relationship are saddled with a heavy burden of proof . . .

> That the at-will presumption cannot be easily overcome is emphasized in several opinions. "The burden of proof here is very great," *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa. Super. 420, 424, 539 A.2d 865, 867 (1988), and only "clear evidence that the parties intended to contract for a definite period" will set aside the presumption, *Greene*, 363 Pa. Super. at 551, 526 A.2d at 1200.

23

> "Great clarity is necessary to contract away the at-will presumption." *Scott v. Extracorporeal, Inc.*, 376 Pa. Super. 90, 99, 545 A.2d 334, 338 (1988). *Veno v. Meredith*, 357 Pa. Super. 85, 99, 515 A.2d 571, 578 (1986), elaborated on that theme: "The modification of an 'at-will' relationship to one that can never be severed without 'just cause' is such a substantial modification that a very clear statement of an intention to so modify is required."

*Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 660 (3d Cir. Pa. 1990). *See also Mercante v. Preston Trucking Co., Inc.*, No. 96-5904, 1997 U.S. Dist. LEXIS 7453, at *9 (E.D. Pa. May 20, 1997) ("[F]ederal and state courts have held that the quantum of evidence to overcome the at-will employment presumption is substantial.").  Additionally, an employer's customs, practices, or policies, in conjunction with accolades given to the employee, do not create a *per se* implied contract. *See Rossi*, 1995 U.S. Dist. LEXIS 225, at *12-13.  In *Rossi*, an employee asseverated that he overcame the at-will presumption and should survive the employer's Motion to Dismiss because an implied contract barred his termination. *Rossi,* 1995 U.S. Dist. LEXIS 225, at *12.  Rossi claimed the contract was formed as a result of the employer's termination policy and the congratulatory remarks he received in a company newsletter. *Rossi,* 1995 U.S. Dist. LEXIS 225, at *8.  In rejecting this assertion, the court explained that an allegation of an existing company policy and "[m]ere accolades intended to recognize past achievement and motivate future good work cannot be interpreted as a clear expression to modify an at-will employment relationship." *Rossi,* 1995 U.S. Dist. LEXIS 225, at *21.[14]

---

[14] In dismissing Plaintiff's complaint, the court in *Rossi* analogized their case to the plethora of cases involving company handbooks or manuals.  "Pennsylvania courts have required employees to show that the manual or handbook evidenced a clear intent by the employer to alter the at-will relationship by offering the policy as a binding term of employment so as to become part of an employment contract . . . . To designate a pat-on-the-back tantamount to a contractual agreement for permanent employment flies in the face of the at-will employment doctrine and well

24

In this case, the assurances made by Ms. Mintzer cannot be construed as a guarantee of employment for definite duration, nor could any reasonable person differ with the conclusion that there was no clearly expressed intention to be bound. In fact, Ms. Mintzer's assurances do not even touch on the tenure of Plaintiff's employment.  As such, Plaintiff's Amended Complaint fails to establish the existence of any definitive employment agreement.  Similarly, Plaintiff's allegations fail to show the existence of any implied contract which modified the at-will relationship.   The single favorable performance review and pay raise, which according to Plaintiff, was issued to some or all of Defendant's associates,[15] does not amount to a implied-in-fact contract renouncing the at-will presumption.

In addition to the infirmities that exist regarding Plaintiff's allegations of contractual intent, the alleged oral contract similarly lacks consideration.  "Consideration is defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made," however, "the terms benefit and detriment are used in a technical sense in the definition, and have no necessary reference to material advantage or disadvantage to the parties." *Stelmack v. Glen Alden Coal Co.*, 14 A.2d 127, 128 (Pa. 1940). Yet, "[i]t is axiomatic that the performance of an act which one party is legally bound to render to the other party is not legal consideration." *Chatham Communications, Inc. v. Gen. Press Corp.*, 344 A.2d 837, 840 (Pa. 1975). "A promise to do what the promisor is already bound to do cannot be consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal." *In re Commw. Trust Co. of Pittsburgh*, 54 A.2d 649, 651 (Pa. 1947).

---

established precepts of contract law."  *Rossi,* 1995 U.S. Dist. LEXIS 225, at *21-22.

[15]  *See* Am. Compl. ¶ 42.

25

The requisite consideration is non-existent in this case, as there was no exchange. Defendant was already legally obligated to comply with the FMLA. Ms. Mintzer's assurance that Defendant would not violate federal law cannot be deemed valid consideration, as one cannot contract to do something they were already legally bound to do. Plaintiff has presented this Court with no facts to demonstrate that further amendment would render the claim potentially sustainable.  Accordingly, Count V of Plaintiff's Amended Complaint shall be dismissed with prejudice.

### vi.    Punitive Damages

In further support of its Motion to Dismiss, Defendant maintains that Plaintiff has pled no facts which could entitle him to punitive damages under the ADA or Title VII.  This issue is rendered moot by reason of this Court's dismissal of said claims with prejudice.

**III.     Conclusion**

For the reasons set forth hereinabove, Defendant's Motion to Dismiss Count I of

Plaintiff's Amended Complaint shall be denied.  Defendant's Motion to Dismiss Counts II, III,

IV and V of Plaintiff's Amended Complaint shall be granted and said Counts shall be dismissed

with prejudice.

An appropriate Order follows.

BY THE COURT:


 /s/ C. Darnell Jones, II
C. Darnell Jones,   II    J.